UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ANN HOBART, | ) | CIVIL NO. 4:21-CV-02152 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Patricia Ann Hobart, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED.

## II.     BACKGROUND & PROCEDURAL HISTORY

On August 19, 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 20, 409; Doc. 14, p. 3).  In this application, Plaintiff alleged she became disabled on April 1, 2013, when she was 50 years old, due to the following conditions: back pain due to LS radiculopathy, degeneration of the lower lumbar spine with moderate L5-S1left lateral recess narrowing and neural foraminal encroachment with mild L4-L5 canal stenosis, and SI joint irritability. (Admin. Tr. 409; Doc. 14, pp. 4-6). Plaintiff alleges that the combination of these conditions affects her ability to sit, stand, walk, dress herself, climb stairs, lift items, sleep, balance, maintain a pace, prepare meals, and respond appropriately to stressful situations. (Doc. 14, p. 5; Admin. Tr. 206-13). Plaintiff has at least a high school education. (Admin. Tr. 420). Before the onset of her impairments, Plaintiff worked as an electrical assembler and inspector. (Admin. Tr. 419).

On November 21, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 20). On December 8, 2016, Plaintiff requested an administrative hearing. (Admin. Tr. 20).

On September 21, 2017, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Bruce S. Fein (the

"ALJ"). (Admin. Tr. 20, 35). On November 7, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 35). On December 5, 2017, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 5). Along with her request, Plaintiff submitted a pain assessment as new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 6-12).

On January 26, 2018, the Appeals Council denied Plaintiff's request for review, stating that the pain assessment did not relate to the period for which the ALJ decided Hobart's claim.  (Admin. Tr. 1-2).

On March 26, 2018, Plaintiff filed a complaint in the district court, alleging that the ALJ's decision was not supported by substantial evidence and improperly applied the law. (Doc. 1 in case no. 3:18-CV-00666-RDM). In her briefs, Plaintiff alleged that the ALJ erred by rejecting "the uncontroverted opinion of the consultative examiner based upon lay reinterpretation of the evidence," and failing to appoint a medical expert, and relying on the grid rules despite finding non-exertional limitations. (Doc. 11, pp. 6, 11, 16, in case no. 3:18-CV-00666-RDM).  In a report and recommendation dated March 28, 2019, then Chief Magistrate Judge Schwab found that the ALJ improperly relied upon the grid rules in finding Hobart not disabled at Step 5 because "the SSRs upon which ALJ Fein relies do not

specifically speak to the impact of the combination of Hobart's nonexertional impairments on her occupational base." (Report and Recommendation in case no. 3:18-CV-00666-RDM, pp. 11-15 (citing 20 C.F.R. § 404.1560(c)(2))). Then Chief Magistrate Judge Schwab recommended remand for a new administrative hearing. (Report and Recommendation in case no. 3:18-cv-00666-RDM, p. 16). On May 14, 2019, Judge Robert D. Mariani adopted the report and recommendation in full, vacating the ALJ's decision and remanding for a new hearing. (Order in case no. 3:18-CV-00666-RDM).

On December 3, 2019, Plaintiff, assisted by her counsel, appeared and testified during a video hearing before the same ALJ. (Admin. Tr. 409). On January 13, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 421). On February 6, 2020, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 403).

On November 1, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to review. (Admin. Tr. 399).

On December 23, 2021, Plaintiff filed her second complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying

the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1, p. 1). As relief, Plaintiff requests that the Court reverse the Commissioner's decision or remand this case and award attorney's fees. (Doc. 1, pp. 1-2).

On March 10, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 12, pp. 1-3). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 14), the Commissioner's Brief (Doc. 15), and Plaintiff's Reply (Doc. 16 ) have been filed.  This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by

substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence

---

[1] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).
[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).
[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-

---

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a

---

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).
[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[11] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[12] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[14] 20 C.F.R. § 404.1520(a).
[15] 20 C.F.R. § 404.1520(a)(4).

caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[18]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

## IV.   DISCUSSION

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his January 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2016. (Admin. Tr. 411). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

---

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).
[17] 20 C.F.R. § 404.1545(a)(2).
[18] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.
[19] 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between April 1, 2013 (Plaintiff's alleged onset date) and March 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 411-12). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s):  lumbar degenerative disc disease with right side radiculopathy, left sacroiliac joint dysfunction, panic disorder, and major depressive disorder with a single episode. (Admin. Tr. 412).  At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 412).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) subject to the following additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs, and ladders, ropes, and scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. She should be afforded the opportunity to alternate between sitting and standing at 15-minute intervals throughout the workday. [Plaintiff] is able to work in a low-stress job defined as requiring only occasional decision-making, occasional changes in the work setting, and occasional judgment.

(Admin. Tr. 414).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 419). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 420). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations:  labeler (DOT# 920.687-126) with about 26,000 jobs in the national economy; folder, laundry industry (DOT# 369.687-018), with about 7,500 jobs in the national economy; and garment folder (DOT# 789.687-066) with about 7,000 jobs in the national economy. (Admin. Tr. 420).

### B. WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence because it exceeds the limitations of all medical opinions of record and because Plaintiff was entitled to a hearing before a new ALJ upon the previous remand due to unconstitutional appointment of the ALJ at the time of the previous hearing. (Doc. 14, p. 7).  Plaintiff argues that an ALJ cannot find a less restrictive

RFC than opined in any medical opinions of record[20] and that an ALJ may not use "lay reinterpretation of raw medical data . . . to supplant a physician's opinion."[21] In response, the Commissioner contends that substantial evidence supports the ALJ's decision and that the ALJ was not required to limit Plaintiff to sedentary work. (Doc. 15, p. 1, 15-16).

The preliminary issue here is whether the Third Circuit allows an ALJ to form a less restrictive RFC than that found in any medical opinion. It is the ALJ's duty to assess a claimant's RFC and that the ALJ must consider all of the evidence, not only the medical opinions of record.[22]  However, in Social Security cases, "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

---

[20] Doc. 14, pp. 11-13 (citing *Doak v. Heckler*, 790 F.2d 26, 29) (3d Cir. 1986); *Sanders v. Berryhill*, Civ. A. No. 4:16-cv-02160-MWB at *11 (M.D. Pa. Dec. 11, 2017) (Saporito, M.J.); *Prebish v. Berryhill*, Civ. A. No. 3:18-cv-00710 at * 17 (M.D. Pa. Jun. 10, 2019) (Carlson, M.J.); *Barnett v. Berryhill*, Civ. A. No. 18-cv-00637 at *16-17 (M.D. Pa. Dec. 10, 2018) (Carlson, M.J.); *Middleton v. Berryhill*, No. 1:18-cv-00106 at *19 (M.D. Pa. Mar. 22, 2019) (Schwab, M.J.) ("[I]t is error to find physical limitations in excess of any found by a medical professional, if a medical opinion is contained in the record.")).

[21] Doc. 14, pp. 11-13 (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("[A]n ALJ may not make speculative inferences from medical reports" and "is not free to set his own expertise against that of a physician who presents competent evidence."); *Sanders*, Civ. A. No. 4:16-cv-02160-MWB at *11 (M.D. Pa. Dec. 11, 2017) (Saporito, M.J.)).

[22] 20 C.F.R. §§ 404.1512(b), 404.1545(a)(3), 404.1546(c); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

assessment from a physician regarding the functional abilities of the claimant."[23]  In *Doak*, the Third Circuit reversed the ALJ's decision because the ALJ determined that the plaintiff was able to perform work at a more strenuous level than found in either medical opinion of record.[24] In the Third Circuit, an RFC assessment is not supported by substantial evidence where an ALJ finds a lesser degree of limitation— meaning a greater degree of ability—than found by any medical professional without other evidence that supports the ALJ's RFC determination.[25] This court has rejected more than one ALJ decision as unsupported by substantial evidence where the ALJ rejected all of the medical opinions of record.[26] By contrast, ALJs are permitted to find *more restrictive* RFCs than medical opinions indicate.[27]

---

[23] *McKean v. Colvin*, 150 F. Supp.3d 406, 418 (M.D. Pa. 2015).

[24] *Doak*, 790 F.2d at 26-29.

[25] *Decker v. Berryhill*, No. 1:17-CV-00945, 2018 WL 4189662, at *4-6, (M.D. Pa. June 8, 2018), *report and recommendation adopted*, No. 1:17-CV-945, 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018) (listing cases).

[26] *See id.*; *see McKean*, 150 F. Supp. 3d at 418.

[27] See *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-63 (3d Cir. 2011) (declining to remand because the ALJ's RFC determination was more restrictive than suggested by a persuasive medical opinion); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) (affirming the ALJ's decision because the ALJ created a more limited RFC than indicated by the medical opinion); *Metzgar v. Colvin*, No. 3:16-CV-1929, 2017 WL 1483328 (M.D. Pa. Mar. 29, 2017) (emphasis in original), *report and recommendation adopted* 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017) ("[W]hen an ALJ is saying that a claimant can do more than the medical source opinion states, courts exercise caution and suggest that only rarely can an ALJ unilaterally impose an RFC on a claimant that is less restrictive than the residual functional capacity found by the medical professional.").

The Commissioner contends that *Foux v. Saul*, 530 F. Supp. 3d 522 (M.D. Pa. Mar. 30, 2021) protects the ALJ's decision here, essentially by limiting the Third Circuit's disdain in *Doak* for RFCs which are less restrictive than opined by any doctor. (Doc. 15, pp. 15-17). The Commissioner errs in her interpretation of *Foux*, which instead holds that an ALJ properly formed an RFC based on a medical opinion issued two years before the ALJ's decision and that the ALJ did not err in failing to obtain a *new* medical opinion in light of the claimant's worsening neck pain.[28] Reliance on an earlier medical opinion is not the same as reliance on no medical opinion or a less restrictive RFC than opined in any medical opinion.

This record contains five medical opinions, including two which stated that the record contained insufficient evidence upon which to render an opinion, two about physical functioning, and one opinion about mental capacity. (Admin. Tr. 419). The ALJ rejected the opinions which found insufficient evidence because the record was further developed after the rendering of those opinions. (Admin. Tr. 419).

Two doctors, Dr. Jenouri and Dr. Patel, opined as to Plaintiff's physical abilities. (Admin. Tr. 418). Dr. Jenouri found Plaintiff could: occasionally lift and carry up to ten pounds and never lift or carry more than ten pounds; sit for up to two hours at a time and six hours in one workday; stand or walk for up to one hour at a

---

[28] *Foux v. Saul*, 530 F. Supp. 3d 522, 525–26 (M.D. Pa. 2021).

time and one hour per workday; occasionally reach; frequently handle, finger, feel,

push, and pull; occasionally operate foot controls and climb ramps and stairs; and

never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Admin.

Tr. 318-23). With regard to Dr. Jenouri's medical opinion, the ALJ stated:

> The medical opinion of consultative examiner, Gilbert Jenouri, M.D. is
> given little weight (5F). Dr. Jenouri's medical opinion was based on
> only one examination of the claimant one year after the date last
> insured. Further, his opinion is not well-supported given the objective
> findings outlined above, including Dr. Jenouri's own physical
> examination. Although at times, the record shows that the claimant had
> antalgic gait, she was observed to ambulate independently and have
> otherwise unremarkable gait (3F/16; 6F/11; 7F/4). She could reportedly
> stand and/or walk for 30 minutes at a time (3F/15; 6F/10). Dr. Jenouri's
> finding that the claimant had decreased sensation to fine touch in the
> bilateral lower extremities was inconsistent with the record which
> shows that the claimant had intact sensation and normal reflexes (2F/4;
> 3F/15; 6F/10; 7F/4). Further, the records do not reflect significantly
> reduced range of motion in the claimant's shoulders, elbows, wrists,
> hands, and thumbs as Dr. Jenouri noted (5F). Dr. Jenouri observed that
> she was able to complete a form, zip, button, and tie (5F/2). Dr.
> Jenouri's manipulative limitations are thus unsupported by the record.
> Further, the complete inability to perform balancing, stooping,
> kneeling, crouching, crawling, and some climbing are inconsistent with
> the record and generally normal muscle tone, bulk, and strength found
> on examinations throughout the record (2F/4; 3F/15; 6F/10; 7F/4).
> Further, few medical sources identified a problem with the claimant's
> balance or coordination (3F/16; 6F/11; 7F/4).

(Admin. Tr. 418). Therefore, the ALJ rejected Dr. Jenouri's medical opinion.

Dr. Patel found Plaintiff could walk less than one block without rest or severe

pain, sit fifteen minutes without needing to stand, stand fifteen minutes without

needing to sit, sit less then two hours total in one workday, and stand less than two hours total in one workday. (Admin. Tr. 684-85). Dr. Patel found Plaintiff would need 10-15 minute unscheduled breaks for each 10-15 minutes Plaintiff works and that Plaintiff could rarely twist and never stoop, crouch, squat, or climb stairs or ladders. (Admin. Tr. 686). Dr. Patel found that Plaintiff could rarely lift and carry up to ten pounds and never lift more than ten pounds. (Admin. Tr. 686). With regard to Dr. Patel's medical opinion, the ALJ stated:

> The opinion of the claimant's physician, Pravinchandra Patel, M.D. is given little weight (8F) . . . . Dr. Patel's opinion is given little weight because it is inconsistent with the evidence as a whole and with Dr. Patel's treatment and observations of the claimant. As noted above, the medical record does not demonstrate that the claimant had pain or limited range of motion in her hands, fingers, or arms. Further, there is no support for the finding that the claimant could never look down and rarely turn her head. The claimant reported being able to drive, which requires the ability to turn the head in all directions (5E). Further, Dr. Patel's opinion that the claimant could only sit and stand/walk for 15 minutes at a time for two hours in an eight-hour workday is inconsistent with the record and his own treatment records which show that the claimant could stand/walk for 30 minutes and sit for an unlimited period of time (3F/15; 6F/10). His lifting and postural restrictions are also inconsistent with the record which shows that the claimant was ability [sic] to rise from a seated position normally and did not require assistance getting on and off an examination table (3F/16; 5F/2; 6F/11; 7F/4). Likewise, Dr. Patel's opinion that the claimant would be off-task for 25% of the day and was incapable of even "low-stress" work was inconsistent with the evidence showing that she is able to perform personal care for herself, prepare meals, clean her house, mow with a tractor for 20 minutes at a time, grocery shop, drive a car, and visit with family and friends (5E/3).

(Admin. Tr. 418). Thus, the ALJ also rejected Dr. Patel's medical opinion.

Therefore, the ALJ rejected both medical opinions about Plaintiff's work-related physical functioning. This court has previously rejected decisions by ALJs who found all of the medical opinions of record to have little weight and could find this ALJ decision unsupported by substantial evidence based upon the complete rejection of all physical function medical opinions of record.[29] However, I will also examine whether the ALJ found a more or less restrictive RFC than opined in any physical function medical opinion. Dr. Jenouri and Dr. Patel both opined that Plaintiff could never climb ladders, stoop, crouch, or lift or carry more than ten pounds. (Admin. Tr. 318-23, 686). Under the applicable regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," while "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[30] Here, with regard to physical functions, the ALJ found Plaintiff retained the RFC to engage in light work as defined above with the ability to "occasionally climb" ladders and occasionally stoop and crouch. (Admin. Tr. 414). Although both doctors opined that Plaintiff could only lift and

---

[29] *See Decker*, 2018 WL 4189662, at *4-6, *report and recommendation adopted*, 2018 WL 4184304; *McKean*, 150 F. Supp. 3d at 418.
[30] 20 C.F.R. § 404.1567(a)-(b).

carry up to ten pounds and light work requires the ability to lift and carry up to twenty pounds, the ALJ did not add any specific lifting or carrying limitations to Plaintiff's RFC or even explain why the ALJ believed Plaintiff could lift and carry more than ten pounds. As the Third Circuit clearly rejected in *Doak*, the ALJ here found Plaintiff able to perform more strenuous work than found in any relevant medical opinion. (Admin. Tr. 414).

Because the ALJ assigned little weight to both medical opinions and found an RFC with greater physical functioning than opined by any physician, the ALJ's decision is not supported by substantial evidence and is therefore vacated. Because the Commissioner's decision must be vacated and the case remanded,

## C.   APPOINTMENTS CLAUSE CHALLENGE

Plaintiff's case was first heard by ALJ Fein in 2017. That decision was appealed to this court and remanded. On remand ALJ Fein heard the case for a second time. The Commissioner argues that "[t]he fact that Plaintiff previously appeared for a hearing before the same ALJ in 2017 is of no moment here because the ALJ's prior 2017 decision was vacated by the Court in 2018." (Doc. 15, p. 10-11). The Commissioner argues that because ALJ Fein was properly appointed at the time of the hearing in 2020, there is no error. I agree with the Plaintiff that the Commissioner is wrong. *See Denicola v. Comm. of Soc. Sec.,* Civ. A. No. 3:19-CV-

01705, 2021 WL 735853 at *5 (M.D. Pa. Feb. 25, 2021); *Evanitus v. Kijakazi*, Civ. A. No. 1:20-cv-01187-MCC (M.D. Pa. Nov. 23, 2021).

The Commissioner fails to discuss or distinguish *Denicola* or *Evanitus*. There is no reason the Court should depart from these decisions in this case. Hobart was entitled to a new ALJ on her remand hearing in 2020. She was denied a hearing with a new ALJ. Remand is required with a hearing before a different ALJ.[31]

Plaintiff's remaining claims of error will not here be addressed. "A remand may produce different results on these claims, making discussion of them moot."[32]

[The next page contains the conclusion]

---

[31] We don't suggest that the integrity or competency of ALJ Fein is compromised, only that the Constitution's Appointments Clause requires a different ALJ on remand.

[32] *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for remand be Granted as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings before an ALJ other than ALJ Bruce S. Fein pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Patricia Ann Hobart.

(4)    An appropriate Order will issue.

Date: February 21, 2023                     BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge